IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE GARCIA ESTRADA<br>    TDCJ-CID #835624 | §<br>§<br>§ | |
| v. | § | C.A. NO. C-04-687 |
| | § | |
| DOUG DRETKE, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Joe Garcia Estrada alleges that defendants denied him access to the courts in violation of his First Amendment rights. (D.E. 1, 15). He also claims that defendant David Diaz retaliated against him for attempting to exercise his First Amendment rights. Id. Defendants David Diaz and Elizabeth Moore move for summary judgment to dismiss plaintiff's claims for failure to state a claim and on the grounds of qualified immunity. (D.E. 100). Plaintiff has filed a response in opposition. (D.E. 112). For the reasons stated herein, it is respectfully recommended that defendants' motion be granted, and that plaintiff's claims be dismissed with prejudice.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed this lawsuit on December 22, 2004, against David Diaz, a McConnell correctional officer; Elizabeth Moore, alleged to be the McConnell Unit law library supervisor; and Doug Dretke, the former TDCJ-CID director. (D.E. 1). On April 21, 2005, he filed an amended complaint and alleged, *inter alia*, that certain other McConnell Unit officials and employees were denying him access to the courts by tampering with his legal mail, denying him legal visits and access to the law library, denying him supplies, and charging him for supplies he did not receive. (D.E. 15). He also complained that, after he complained of the mail tampering, prison officials failed to investigate his claims properly. Id. Following a November 1, 2005 Spears[1] hearing, plaintiff's claims against all defendants were dismissed, except his denial of access to the courts claim against Ms. Moore and Officer Diaz, and his retaliation claim against Officer Diaz. (See D.E. 55, 61, 62).

On August 4, 2006, defendants filed their motion for summary judgment.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

(D.E. 100).  On September 26, 2006, plaintiff filed his response in opposition. (D.E. 112).

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following summary judgment evidence:[2]

- Ex. A: TDCJ Outgoing Legal, Special and Media Log, with business records affidavit;

- Ex. B: Copies of plaintiff's Step 1 and Step 2 documentation for Grievance No. 20005031707; and

- Ex. C: TDCJ Name Search and Position Screen identifying Elizabeth Moore as a Training Specialist III in TDCJ Health Services, Huntsville, Texas.

The following facts are not in dispute:

On October 20, 2004, plaintiff filed a Step 1 grievance against Officer Diaz. (See DX-B at 1-2).  Plaintiff claimed that Officer Diaz had opened a package sent to him by his family that contained legal materials as well as other items. Id. at 1. Plaintiff objected to Officer Diaz opening a package that contained legal material without him present.  Id.  Plaintiff signed for the package, but it did not contain the legal documents he had anticipated, specifically, documents from the Milwaukee,

---

[2] Reference to defendants' exhibits is "DX" followed by the exhibit letter and a page reference.

Wisconsin police department.  Id.  Because he did not have these documents, he was unable to meet a September 24, 2004 deadline with the Fifth Circuit, and his criminal appeal was dismissed for want of prosecution.  Id.

In reply to plaintiff's Step 1 grievance, Warden Castillo answered on November 4, 2004:

> This office has revealed that the package you are referring to was sent to you by your family.  Just because the package contained legal correspondence does not mean it will not be inspected by the mailroom.  The package was considered general mail and does not have to be opened in front of you.  No further action will be taken in this matter.

(DX-B at 2).

On November 20, 2004, plaintiff filed a Step 2 appeal.  (DX-B at 3-4). Plaintiff alleged that the legal documents he had been expecting from the Milwaukee police department had been stolen and replaced by other items that were just "databases of computer feedback as recent as October 2004...."  Id. at 3. He also claimed that the package had weighed three ounces when accepted by Federal Express for delivery to him, but that it only weighed one ounce when he received it, thus evidencing that two ounces of documents were missing.  Id. Finally, he asserted that Warden Castillo had failed to address in the Step 1 response his claim that his legal property had been stolen.  Id.

By response dated December 16, 2004, the Region IV coordinator, S. Chiles, responded to plaintiff's Step 2 grievance:

> Your complaint has been investigated. The package in question was from a general correspondent; therefore, it was opened and inspected for contraband in accordance with Board Policy 03.91. Should content be found to be in violation of Board Policy 03.91, proper paperwork would be prepared and served to you. The McConnell Unit mailroom has no record of denying any content from the package in question. Offenders are required to sign the package log indicating receipt of the package. No action is warranted.

(DX-B at 4).

At the November 1, 2005 evidentiary hearing, plaintiff testified that Officer Diaz tampered with his legal mail in retaliation for his appealing his criminal conviction.[3] As to defendant Elizabeth Moore, at the evidentiary hearing, he claimed that she denied his requests to go to the law library twenty to thirty times in 2004. He further alleged that she denied him legal visits with other inmates without explanation and charged him for supplies he never received.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[3] Plaintiff has filed a 75-page summary judgment response, but it hardly addresses defendants' motion or his claims. (See D.E. 112). Indeed, it seldom even mentions Officer Diaz and Ms. Moore.

P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V. DISCUSSION

### A. Qualified Immunity.

Defendants move for summary judgment on the grounds of qualified immunity. Establishing qualified immunity involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 624 (quoting Price, 256 F.3d at 369). Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

**B.     Plaintiff's Civil Rights Claims.**

    **1.     Denial Of Access To The Courts Against Elizabeth Moore.**

Plaintiff claims that Ms. Moore denied his requests to go to the law library twenty to thirty times during 2004.  Moreover, he asserts that three times she denied him legal visits with another inmate, Dean Hernandez, who he was assisting with a writ.  He also claims that Ms. Moore also denied him three visits with an inmate named David Cash Moore, and denied him three legal visits with an offender named Reyes.  According to plaintiff, Ms. Moore would never articulate a reason why she was denying him these legal visits.  He also alleges that he would request certain legal materials such as carbon paper and type-writer paper, but Ms. Moore would not give him the items he ordered, yet would charge him for those items.  Finally, he complains that she would never provide him with a print-out of the items ordered and the cost.

    **a.     Step 1: Constitutional Violation.**

Prisoners have a constitutionally protected right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis, 518 U.S. at 356;

9

see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. Lewis, 518 U.S. at 351; Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. Lewis, 518 U.S. at 349.

To meet the standing requirement, plaintiff "must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (italics in original). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." Id. at 819. Specifically, to succeed on a claim of denial of access to courts, plaintiff must show that he lost an actionable claim, or was prevented from presenting such a claim because of the alleged denial. See Lewis, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).

In support of their motion for summary judgment, defendants attempt to establish that plaintiff has not identified the proper defendant. (D.E. 100, at 2). As evidence, they offer a computer printout of Ms. Moore's name, current job title and location demonstrating that Ms. Moore is employed as a Training Specialist III in Health Services and works in Huntsville, Texas; she is not employed as a librarian at the McConnell Unit. Id. Regardless of her current employment, however, defendants' evidence fails to establish where or how Ms. Moore might have been employed in 2004. There is no affidavit from Ms. Moore nor a computer printout from the relevant time period to refute plaintiff's allegations that Ms. Moore was the individual who refused him access to the law library.

However, plaintiff's claim against Ms. Moore still fails because he fails to establish any prejudice in any nonfrivolous litigation as a result of Ms. Moore's actions. He complains that he was not allowed to meet with other prisoners to assist *them* with their legal matters. However, he has no protected interest in assisting other inmates file claims or lawsuits; his interest extends only to the filing of non-frivolous matters contesting his sentence or conditions of confinement. Jones, 188 F.3d at 325. Furthermore, to the extent plaintiff was working on his own legal matters, he has failed to allege any prejudice in any pending litigation attributable to Ms. Moore. See Eason, 73 F.3d at 1328. He does not identify any

11

lawsuit that was dismissed, or any deadline that was missed, or any unfavorable ruling that he can trace to Ms. Moore's conduct. As such, plaintiff fails to state a claim of denial of access to the courts against Ms. Moore.

### b. Step 2: Objective Reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Plaintiff has failed to demonstrate that Ms. Moore violated his First Amendment right of access to the courts. Accordingly, it is respectfully recommended that she is entitled to qualified immunity, and that summary judgment be granted in her favor.

### 2. Denial Of Access To The Courts Against David Diaz.

Plaintiff claims that Officer Diaz denied him access to the courts by tampering with his mail, resulting in two lawsuits being dismissed for failure to

prosecute.

### a. Step 1: Constitutional Violation.

Plaintiff's claims passed initial § 1915A screening, however, he has failed to demonstrate that the dismissed lawsuits were non-frivolous actions. Although he testified that Officer Diaz' mail tampering caused him to suffer the dismissal of his criminal appeal, his litigation history refutes this allegation.

In 1997, a jury found plaintiff guilty of the felony offense of aggravated sexual assault of a child in Cause No. 697896, and guilty on six counts of indecency with a child in Cause Nos. 724333, 72332, 724331, 724330, 724329, 724328, 724327, all in the 180th Judicial District Court of Harris County, Texas. On July 11, 1997, he was sentenced to sixty years on the aggravated sexual assault, and to twenty years on each indecency count, sentences to run concurrently. See Estrada v. Cockrell, et al., 4:01-cv-02032 D.E. 27 at 3. On June 18, 2001, he filed a federal habeas corpus petition challenging his state court convictions. Estrada v. Cockrell, et al., 4:01-cv-02032 (S.D. Tex. Mar. 20, 2003). The Houston district court granted respondent's motion for summary judgment and denied plaintiff's application for habeas corpus relief on the merits and denied his request for a certificate of appealability ("COA"). Id. The Fifth Circuit also denied his COA request. Id.

At his Spears hearing, plaintiff claimed that, on October 19, 2004, Officer Diaz had tampered with his legal mail, specifically documents that he was expecting from the Milwaukee police department for his criminal appeal, and that his criminal appeal was dismissed as a result of Officer Diaz' actions. However, according to documents filed in his federal habeas corpus proceeding, he filed his notice of appeal on September 26, 1997. Estrada v. Cockrell, et al., 4:01-cv-02032 at Statement of Facts, Vol. VII, at 25. The First Court of Appeals affirmed his convictions on September 2, 1999. Estrada v. State, No. 01-97-01083-CR, 1999 WL 682620, slip op. at 26 (Tex. App. Sept. 2, 1999) (unpublished). The Texas Court of Criminal Appeals refused Estrada's petition for discretionary review on January 12, 2000. Estrada v. Cockrell, et al., 4:01-cv-02032 at D.E. 27, at 5. The United States Supreme Court denied his petition for writ of certiorari on October 2, 2000. Id. Plaintiff filed applications for state habeas corpus relief on February 28, 2001, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court, without a hearing, on May 9, 2001. Ex parte Estrada, Application No. 49,098-01 through -08, at covers.

Thus, plaintiff's criminal appeal, including his petition to the United States Supreme Court, and his state writs of habeas corpus, were exhausted well before October 2004. Moreover, the Houston district court granted respondent's motion

for summary judgment on the merits and denied his federal habeas corpus petition on March 30, 2003. The Fifth Circuit denied his request for a COA in February 2004.

At the time Officer Diaz inspected the package from plaintiff's family, plaintiff did not have any federal action pending in the Southern District of Texas, and he has failed to explain what possible non-frivolous action he could have had pending in state court. He had exhausted his state appeals and state habeas claims. The right of access to the courts extends only to legitimate lawsuits challenging sentences or conditions of confinement. Lewis, 518 U.S. at 356; Jones, 188 F.3d at 325. Plaintiff has failed to demonstrate that he had any legitimate actions. His conclusory allegations, unsupported by evidence, cannot sustain his First Amendment claim. Thus, he fails to state a denial of access to the courts claim against Officer Diaz.

Moreover, plaintiff's litigation history reveals that, in addition to his first federal habeas petition, he has filed several other actions since he alleged he suffered the denial of access to the courts, including the following:

(1)   Estrada v. Dretke, 4:05-cv-02073; § 2254 habeas corpus petition; dismissed for lack of jurisdiction as a successive petition and request for COA denied;

(2)   Estrada v. Diaz, et al., 05-cv-00454; § 1983 claims erroneously opened as new action; consolidated with C.A. 04-687;

15

 (3) <u>Estrada v. Owsley, et al.</u>, 06-cv-00344; § 1983 case dismissed for failure to state a claim and as frivolous (1st strike);

 (4) <u>Estrada v. Owsley, et al.</u>, 06-cv-00398; § 1983 case dismissed for failure to state a claim and as frivolous (2nd strike); and

 (5) <u>Estrada v. Quarterman</u>, 06-cv-03723; § 2254 habeas corpus petition challenging Harris county convictions; filed in Dallas and transferred to Houston.

Moreover, plaintiff has filed numerous documents in the proceeding now before this Court. There is simply no evidence that Officer Diaz tampered with plaintiff's mail, and, even if he did, plaintiff fails to demonstrate any prejudice.

 **b.** **Step 2: Objective Reasonableness.**

Even if plaintiff could establish that Officer Diaz opened his mail and caused him prejudice in pending litigation, he fails to establish that Officer Diaz' actions were unreasonable in light of the circumstances presented to him. As noted in the response to plaintiff's grievances, the package which Officer Diaz opened was from plaintiff's family, not a law office, a lawyer, or a court. (DX-B at 2). It was considered general mail and opened and inspected pursuant to TDCJ-CID Board Policy 03.91. The fact that Officer Diaz was acting pursuant to an established prison policy indicates that he had a reasonable belief his actions were not in violation of any constitutional right. Thus, Officer Diaz is entitled to qualified immunity and summary judgment in his favor on this claim.

### 3.     Retaliation Claim Against David Diaz.

In his final claim, plaintiff argues that Officer Diaz opened and tampered with his mail in retaliation for his pursuing his criminal appeal.

The Fifth Circuit has noted that "[t]o prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated.  Jones, 188 F.3d at 325.  Moreover, the inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  Id. (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

Plaintiff claims he was a victim of retaliation because he exercised his right to appeal his criminal conviction.  However, as noted above, his direct appeal was resolved on October 2, 2000, when the United States Supreme Court denied his

17

petition for writ of certiorari. His state habeas applications were denied on May 9, 2001, and his federal habeas corpus petition was denied on the merits on March 20, 2003. Thus, plaintiff's litigation history reveals that his criminal appeal and collateral attacks were resolved well before his claims against Officer Diaz arose. Moreover, he fails to explain why his pursuit of an appeal would motivate Officer Diaz to retaliate against him. He does not argue that Officer Diaz had a personal stake in the criminal action, or even that he and Officer Diaz had a history of conflict between them. Plaintiff simply fails to offer any chronology of events from which retaliation can be inferred, such that he fails to state a constitutional violation against Officer Diaz.

Because plaintiff fails to state a constitutional claim, the Court need not examine whether Officer Diaz' actions were reasonable under the circumstances of this case. Saucier, 533 U.S. at 201. It is respectfully recommended that Officer Diaz is entitled to qualified immunity and summary judgment in his favor on plaintiff's retaliation claim.

## VI.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the Court find defendants are entitled to qualified immunity and that summary judgment be granted in their favor, and that plaintiff's claims alleging denial of access to the

courts and retaliation be dismissed with prejudice.

Respectfully submitted this 9th day of January 2007.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).